Filed 12/23/21  P. v. Cornejo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059644 |
| v. | (Super. Ct. No. 05CF2822) |
| JOSE SALCEDO CORNEJO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed.

Moran Law Firm, Amanda K. Moran and Janay D. Kinder for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

This appeal arises from the denial of defendant's motion to vacate his conviction pursuant to Penal Code section 1473.7 [1] which allows for vacatur "due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (*Id*., subd. (a)(1).) Defendant pleaded guilty to robbery in 2006. He is now attempting to naturalize but has discovered his prior conviction is an obstacle. He thus filed the underlying motion.

In 2006, defendant signed a plea form acknowledging that his conviction would have adverse immigration consequences, and an interpreter signed a statement that she interpreted this provision for defendant. The minutes from 2006 also state that defendant was warned of immigration consequences in open court, and an interpreter was present. Nevertheless, defendant testified in the present motion that he did not understand the agreement, that his attorney never explained it to him, and that he does not recall an interpreter being present. He further testified he would not have signed the plea form had he understood the immigration consequences. After an evidentiary hearing, at which defendant testified, the trial court found he was not credible and denied the motion.

On appeal, defendant contends the evidence presented supports a finding of error impairing his ability to understand the immigration consequences of his plea. Pursuant to our high court's recent decision in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), our review is independent, which means we defer to any factual findings the court made based on its observation of live evidence but conduct our own analysis of the "cold" record (i.e., the documentary evidence) and decide for ourselves whether defendant has met his burden. Because defendant testified at an evidentiary hearing, we must defer to the trial court's determination that defendant was not a credible witness. Outside of his testimony, however, there is essentially no evidence of an error that

---

[1]	All further statutory references are to the Penal Code.

impaired defendant's understanding of the immigration consequences of his plea. Accordingly, we affirm.

FACTS

On January 30, 2006, defendant pled guilty to two felony counts of second-degree robbery (§§ 211, 212.5, subd. (c)). On the plea form, defendant initialed a provision that states, "Immigration consequences: I understand if I am not a citizen of the United States, my conviction for the offense charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." An interpreter signed the following declaration: "I, Dolores Gordon, having been duly sworn as a court certified interpreter, state that I am fluent in the [blank] language. I translated the contents of this form to defendant in that language. The defendant told me he/she understood the contents of this form and initialed and signed it in my presence." The record contains no explanation as to why the language line was left blank. Defendant's attorney likewise signed the form, acknowledging he had "discussed the possible sentence ranges and immigration consequences with defendant."

The court's minutes from that day reflect a hearing at which defendant was present in court, along with Dolores Gordon, who is listed as a Spanish language interpreter. The court accepted defendant's guilty plea. The minutes also reflect the following: "Defendant advised of the possible consequences of plea affecting deportation and citizenship."

At that point, defendant had been in jail for 152 days. Pursuant to the plea, defendant was sentenced to probation.

Fourteen years later, defendant filed the underlying motion to vacate his conviction. Defendant submitted a declaration denying he had been warned about any immigration consequences of his plea, stating, "I remember my attorney said I can get out

3

soon if I initial and signed paper.  I was in custody in jail.  I initialed papers when I was in court in jail. We were the two of us only. The attorney was showing me where to initial.  I think my attorney did not speak Spanish language.  I did not read the papers and I did not understand the papers. Everything happened very fast.  I went [back to jail].  I did not see the Judge talking to me. Three or four days later I got out of jail." "I do not recall the Interpreter reading me telling me about immigration consequences. I don't remember anyone telling me that I could be deported, excluded from admission to the U.S[.], or that I would not be able to naturalize." "The Judge never advised me that I can get deported, denied admission into the United States or denied Naturalization if I say that I am guilty or *cannot receive my green card.*  The interpreter did not tell me anything about immigration consequences if I say that I am guilty."

Defendant further claimed that he did not even see the judge when he entered his plea: "At the time of the conviction I did not see the Judge. My attorney was representing me without me being in the Court room. If I knew that I will not be able to become a United States citizen I would have not pleaded guilty."

Defendant described his current circumstances as follows: "I am legally married and my wife and 4 children are American Citizens.  For 20 years I live here, work here and I pay taxes here. I don't have criminal cases. This is the only time I have been arrested.  Now I have approved petition from my wife to get green card, but because of this conviction [my attorney] told me I can get deported for the rest of my life."

Defendant's former attorney could not be located by his current attorney (there was some indication that he had passed away).  Also, the reporter's transcript from the 2006 hearing was no longer available.

The court held a hearing on defendant's motion at which defendant took the stand to be cross-examined by the district attorney. Defendant claimed that he was innocent of the robbery, that he simply picked up two friends without knowing they had robbed someone.  He testified that the form setting forth the terms of his probation, which

was initialed with the letter "J" in various places, was not initialed by him (however, he agreed that the initials "JC" on the plea form—which contained the immigration advisement—were his authentic initials). He claimed he only spent about three or four minutes with his attorney when signing the plea form. He denied that an interpreter was present when he signed the plea form and testified that he could not read the form because he did not speak or read English. He denied that a judge advised him of immigration consequences. The court specifically asked defendant about whether he saw a judge at the time of his plea, and defendant continued to claim he had not appeared before a judge for his plea.

In the end, the court found defendant was not a credible witness and denied the motion. The court stated, "The defendant's testimony borderlines . . . preposterous when he testifies that, number one, he wasn't in court when his plea agreement was taken; that he wasn't—the rights were not reviewed with him; that some of the initials he implies are not his. I find him either to be incredible or a poor historian of the facts." Defendant appealed.

## DISCUSSION

As our high court recently explained, "The population of the United States includes millions of immigrants who arrived as children, attended schools, and found work here. [Citation.] Whether they become citizens or not, these immigrants' ties to our country are evident not only in their work and schooling, but in how they've formed attachments and families of their own. In contrast, what ties they once had to their country of birth—from which they may lack even memories—often slip away. So when long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States. [Citation.] Because the prospect of deportation 'is an

5

integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges [citation], both the Legislature and the courts have sought to ensure these defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient." (*People v. Vivar*, *supra*, 11 Cal.5th at p. 516.)

One of those remedies is section 1473.7, subdivision (a)(1), which provides as follows: "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." "[T]he focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*).)

"A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea." (*Vivar, supra*, 11 Cal.5th at p. 517.) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an

6

immigration-neutral negotiated disposition was possible." (*Id* at pp. 529-530.) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with "'objective evidence.'" (*Id.* at p. 530.)

At the time defendant filed his opening brief, the appropriate standard of review was unsettled, and defendant asked that we review his motion de novo. Since that time, however, our high court decided *Vivar* and clarified that the appropriate standard of review is not de novo, but instead independent review. "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review.......'" [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] ......[F]actual determinations that are based on "'the credibility of witnesses the [superior court] heard and observed'" are entitled to particular deference, even though courts reviewing such claims generally may "'reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting."' [Citation.] In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where . . . the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra,* 11 Cal.5th at pp. 527-528, fns. omitted.)

Unfortunately for defendant, this standard of review largely dooms his appeal. Because the trial court held an evidentiary hearing and found defendant's testimony incredible, we must defer to that finding. For that reason, defendant's reliance on *Mejia*, is misplaced. There, the Court of Appeal credited the defendant's claim that he would not have signed a plea form had he known of the future immigration consequences. (*Mejia, supra,* 36 Cal.App.5th at p. 872.) But as even defendant is compelled to acknowledge, that case is distinguishable because the trial court did not make an adverse credibility finding against the defendant. (*Ibid.*) Here, under *Vivar*, we cannot credit testimony from defendant that the trial court found to be incredible.

Aside from defendant's own testimony, he relies on evidence that his attorney at the time was allegedly in poor health, both physically and mentally, resulting in ineffective assistance of counsel. However, none of that evidence was before the trial court and thus we cannot consider it. On that ground, we denied defendant's motion to augment the record.

Otherwise, defendant has not set forth any substantial corroboration of his claim that he would not have signed the plea form had he been properly advised of the immigration consequences. Defendant arrived in the United States in July 1999 at the age of 14 years old, which means he had been in the country for about six years and was 20 years old when he signed the plea form in January of 2006. While six years is significant, it is not such a long time that he would necessarily have lost ties with his home country and set down deep roots. There is nothing in the record to suggest that he was married, had children, or had other strong family ties to the United States at that time. Nor is there any contemporaneous evidence that he was particularly concerned about immigration consequences. Beyond the mere fact that he had spent six years in this country, there is no corroborating evidence to suggest that defendant placed a high priority on immigration consequences at the time of his plea.

Unfortunately, on the record we possess and in light of the standard of review we must employ, there simply is no ground to reverse the trial court. We say that is unfortunate because defendant presents a sympathetic case. Aside from this one criminal case, he has, by all accounts, lived an upstanding life and now has deep roots in the community. We recognize this and appreciate his contributions. We also sympathize with his plight. However, we must apply the law as it is written.[2]

DISPOSITION

The postjudgment order denying defendant's motion to vacate his conviction is affirmed.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[2] For the same reasons, defendant's contention that he received ineffective assistance of counsel is unavailing. His argument is based entirely on his own testimony, which was rejected by the trial court, as well as the evidence of counsel's physical and emotional issues, of which we have no evidence in the record.